IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CR-21-CR-161-R |
| | ) | |
| TERRANCE MICHAEL TAYLOR, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Terrance Michael Taylor's Motion to Withdraw Plea of Guilty [Doc. No. 99]. The matter has been fully briefed, and a hearing held. As stated on the record at the hearing and for the reasons below, the Court DENIES the motion.

Just before jury selection on November 2, 2021, Mr. Taylor pled guilty to one count of being a felon in possession of a firearm and two counts of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Doc. Nos. 1, 49. These charges stemmed from events in June 2020 when Defendant engaged in two separate but similar shootings. During his change of plea hearing, Mr. Taylor admitted—on the record and under oath—that on the charged dates, he knowingly possessed the charged ammunition and firearm, that he was a felon, that he knew he was a felon, and that the ammunition and firearm had crossed state lines to reach Oklahoma. Doc. No. 72 at 11–14. He, thus, unequivocally pled guilty to being a felon in possession of a firearm and ammunition. *Id*.

In the following months, in what the Court can only characterize as Defendant's attempted manipulation of the proceedings, Mr. Taylor engaged in a series of actions in an

apparent effort to escape the consequences of his guilty plea. He fired his attorney, attempted to fire a second (*See* Doc. No. 59, Doc. No. 95 at 12–13, Doc Nos. 97 and 98), and wrote eighteen letters[1] to the Court. Most of these letters described a baseless conspiracy theory where Defendant's ex-spouse and the Del City Police Department framed him for the crimes to which he pled guilty. In general, the letters made little sense and were mostly frivolous.

The path that ultimately led to this order began on February 28, 2022, when Mr. Taylor stated in one of his many letters that he was interested in withdrawing his plea but was concerned about losing the reduction in offense level points for acceptance of responsibility. Doc. No. 70. Several weeks later, on March 21, 2022, Defendant again broached the subject of withdrawing his plea, but "solely for future reference purposes." Doc. No. 78. Then, on April 18, 2022, during what was intended by the Court to be his sentencing hearing, Defendant finally confirmed that he would like to withdraw his plea [Doc. No. 95 at 13], but only after first stating he merely wanted "to reserve my claim for the plea for appeal." *Id*. at 9. The Court then conducted a hearing on June 24, 2022.

A defendant does not have an absolute right to withdraw a guilty plea. *See United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000). To withdraw his guilty plea a defendant "bears the burden of establishing a fair and just reason" for his request. *United States v. Marceleno*, 819 F.3d 1267, 1272 (10th Cir. 2016)(quotation marks and citation

---

[1] The letters are in the record as Doc. Nos. 52, 55, 61, 67, 68, 70, 73, 78, 80, 88, 89, 90, 97, 100, 103, 104, 106, and 109.

omitted); *see* Fed. R. Crim. P. 11(d)(2)(B). In determining whether a Defendant has met his burden the Court considers the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether [he] delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to [him]; (6) whether [his] plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (quoting *United States v. Sandoval*, 390 F.3d 1294, 1298 (10th Cir. 2004)). Although "'motion[s] to withdraw a plea prior to sentencing should be freely allowed'" [*United States v. Garcia*, 577 F.3d 1271, 1274 (10th Cir. 2009) (quoting *United States v. Hamilton*, 510 F.3d 1209, 1213–14)], "[w]hether to permit withdrawal 'always and ultimately lies within the sound discretion of the district court,'" *United States v. Sanchez-Leon*, 764 F.3d 1248, 1259 (10th Cir. 2004) (quoting *United States v. Soto*, 660 F.3d 1264, 1267 (10th Cir. 2011)).

Mr. Taylor argues that he did not have the opportunity to appropriately review the discovery in his case before changing his plea because he only received the material on October 30, 2021, a few days before his scheduled trial. He claims that upon reviewing the discovery—after pleading guilty—he realized he had potential defenses based on alleged contradictions in testimony and other perceived holes in the Government's case. He additionally argues that his standby counsel informed him that if he were to plead guilty, the pending state court charges against him would be dismissed.[2] Doc. No. 99 at 6.

---

[2] State criminal charges for pointing a firearm at another, molesting a standing vehicle, and assault and battery with a dangerous weapon are currently pending against Defendant Taylor in Case No CF-2020-2653, District Court of Oklahoma County, stemming from the same incidents as those underlying the charges in the instant case.

Defendant argues that as a result his plea was not knowing and voluntary. The Court disagrees.

The first *Yazzie* factor requires that the Court consider whether Mr. Taylor has asserted his innocence.

> To prevail on an assertion of innocence claim, a defendant must make an argument that is both credible and supportive of a legally cognizable defense. *Marceleno*, 819 F.3d at 1273; *see Hamilton*, 510 F.3d at 1214 ("[T]he mere assertion of a legal defense is insufficient; the defendant must present a credible claim of legal innocence."). "A district court need not accept a defendant's version of the facts as true for purposes of evaluating whether a defendant's assertion of innocence is credible." *Marceleno*, 819 F.3d at 1274–75. We have explained that "[t]o hold otherwise would undermine Rule 11 by removing the discretion granted to district courts on motions to withdraw a guilty plea." *Id.* at 1275. Instead, we have explained that a credible claim is one that "'has the quality or power of inspiring belief,' and 'tends to either defeat the elements in the government's prima facie case or make out a successful affirmative defense.'" *Id.* (*quoting United States v. Thompson-Riviere,* 561 F.3d 345, 353 (4th Cir. 2009)).

*United States v. Wilcox*, No. 20-7047, 2022 WL 2253948, at *4 (10th Cir. June 23, 2022). The Court finds that Defendant has been ambiguous with regard to his innocence. He proposed a theory that the Del City Police Department and his ex-wife have conspired to frame him. He suggests an alibi or evidence tampering, but he does not unambiguously claim he is innocent of the charges to which he pled guilty, nor does he deny his involvement in the shootings that resulted in the instant charges. In short, Defendant fails to present either a credible argument of innocence or a legally cognizable defense, and therefore this factor weighs against permitting him to withdraw his plea.

As to the second *Yazzie* factor, the Court finds that the Government would not be substantially prejudiced by moving forward with a trial. The key witnesses are still

available, and Mr. Taylor is still pending trial in his state case, where much of the same evidence will be presented. However, the government previously expended energy and efforts in plea negotiations and then preparation for trial while Defendant vacillated in whether he wanted to plead guilty. Factor two therefore does not weigh in favor of or against Defendant's request.

Analyzing the third factor, the Court finds that Defendant has consistently delayed his requests including the instant motion. Mr. Taylor waited until shortly before trial to request that he represent himself. He waited until the morning of trial, when the Court had already called a pool of potential jurors, to decide to plead guilty. Finally, Defendant waited until the day of his sentencing hearing—more than five and a half months after he changed his plea—to move to withdraw his plea. To explain his delay, Mr. Taylor claims that until sometime mid-January 2022 he mistakenly believed his state court charges would be dropped. However, this does not explain why he waited an additional three months before filing the motion to withdraw his plea. Consequently, factor three weighs against Mr. Taylor's request.

The Court next[3] addresses factor five in the *Yazzie* analysis—Defendant's assistance of counsel. Mr. Taylor represented himself when he changed his plea, with a standby counsel available to assist. When a defendant has chosen to represent himself, he cannot "complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). Similarly, "claims of

---

[3] The Court addresses factor four, inconvenience to the Court, in its analysis of factor seven.

ineffective assistance of standby counsel cannot be brought by *pro* se defendants." *United States v. Dotson,* 28 F. App'x 801, 802 (10th Cir. Nov. 7, 2001)(citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). Furthermore, Defendant stated under oath that he was satisfied with the performance and advice he received from his standby counsel. Doc. No. 101-1 at 10–11. Accordingly, factor five weighs against granting Defendant's motion.

The sixth *Yazzie* factor, whether Mr. Taylor's plea was knowing and voluntary, is the crux of the motion at hand. "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Sanchez-Leon*, 764 F.3d 1248, 1259 (10th Cir. 2014) (quotation marks and citation omitted) "[T]o determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea*." United States v. Gigot*, 147 F.3d 1193, 1197 (10th Cir. 1998) (quotation marks and citation omitted). "[S]olemn declarations made in open court carry a strong presumption of verity." *Sanchez-Leon*, 764 F.3d at 1259 (quotation marks and citation omitted).

Rule 11 of the Federal Rules of Criminal Procedure governs plea proceedings and "is designed to assist the district judge in making the constitutionally required determination that a defendant's plea is truly voluntary." *United States v. Ferrel*, 603 F.3d 758, 762 (10th Cir. 2010) (quotation marks and citation omitted). Under Rule 11(b), the Court, when accepting a guilty plea, must "inform the defendant of, and determine the defendant understands," certain information regarding the plea, including "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). In most

cases, the court fulfills its Rule 11 obligation by reciting the elements of the offense to ensure the defendant is informed thereof. *Ferrel*, 603 F.3d at 762.

Here, Defendant, who was representing himself, affirmed at his change of plea hearing under oath: (1) that he had thoroughly reviewed the facts and circumstances of the charges with his standby attorney; (2) that he was not under the influence of drugs or alcohol; (3) that no party had forced him to plead guilty; (4) that he was satisfied with the advice of his standby counsel; (5) that he was pleading guilty of his own free will; (6) that he understood all the possible consequences of his plea; (7) that he was giving up the right to have a jury determine the facts in his case, including those that may impact his sentence; (8) that he had the right to plead not guilty and persist in that plea; (9) that he understood he had the right to see and hear witnesses against him, the right to cross-examine those witnesses, the right to the assistance of counsel, the right to compel the attendance of witnesses, the right to testify, and, if he should choose not to testify, the right to not have a refusal to testify used against him in a court of law; (10) that he understood there would be no trial if he pled guilty; and (11) that he understood by pleading guilty, he waived the rights above. Doc. No. 72 at 6–15. Defendant then admitted to the elements of each of his crimes, including that he possessed a firearm, that he twice possessed ammunition, and that he was prohibited from doing so during the relevant timeframes because of a prior felony conviction. He affirmed that he knew he was a prohibited person and that the weapon and ammunition had traveled in interstate commerce. *Id*. at 12–14. In short, he admitted each of the elements of the § 922(g) offenses.

Despite these declarations in open court, made under oath, Mr. Taylor claims that he misunderstood the law of constructive possession and that he was induced into taking a guilty plea by his standby counsel's promise that his state court case would be dismissed if he pled guilty to his federal charges. The record belies Defendant's current claims. First, Mr. Taylor testified in court that he was satisfied with his standby counsel and that she had done all she could to assist him in the matter. *Id*. at 10–11. He further stated that no officer or agent of any branch of government—federal, state, or local— had promised, suggested, or predicted that he would receive a lighter sentence, probation, or any other form of leniency in return for a guilty plea. *Id*. at 9.

In regard to whether Defendant's counsel advised him that the State would dismiss its pending charges, counsel testified this did not occur. Standby counsel testified that she advised Mr. Taylor that perhaps the State might decide not to pursue the charges depending on the sentence imposed by this Court. In light of Defendant's admissions on the record at his plea hearing and the testimony at the hearing on the instant motion, the Court finds that Defendant's plea was knowing and voluntary. Any disparity between his testimony at the time of his plea and at the hearing on this motion appears to be the result of regret, which is not a basis for permitting a defendant to withdraw his plea.

Due to the similarity of the two remaining factors, the Court addresses factors (4)— inconvenience the Court and (7) waste of judicial resources—together. The Court maintains a full docket of cases, many of which are scheduled for trial in the coming months. Although it would be possible for the Court to schedule a trial for Mr. Taylor, notwithstanding his guilty plea, doing so could cause a delay in other cases before the

Court. Furthermore, permitting Defendant to withdraw his plea and proceed to trial would be a waste of judicial resources. As discussed above, the Court is satisfied with the factual basis for Mr. Taylor's guilty plea. Defendant has not convinced the Court that he believes he is innocent of the charges against him. Mr. Taylor has already wasted judicial resources by waiting until the morning of trial, with potential jurors and counsel ready for jury selection, to enter a guilty plea. Defendant then waited until the morning of sentencing, after the Court had prepared for that proceeding, to move to withdraw his guilty plea. In short, the Court is satisfied that allowing Defendant to withdraw his plea would be a significant waste of judicial resources, given the overwhelming evidence of his guilt.[4]

Under the Tenth Circuit factors as articulated in *United States v. Yazzie* and elsewhere, Defendant has failed to establish a fair and just reason to withdraw his plea of

---

[4] The Government has two witnesses who both saw Mr. Taylor with a gun and saw him discharge that firearm in two separate but similar events. *See* Doc. No. 84 at 1–3. According to the Presentence Report and Police Reports, the first incident took place on May 29, 2020, in which Mr. Taylor confronted a man who had recently sold him a car at the man's home. Doc. No. 84-1 at 6. After the witness refused to refund Defendant $150 for the vehicle, Mr. Taylor pulled out a pistol and shot all four of the vehicle's tires. *Id.* Defendant then threatened the witness with the gun. Doc. No. 84-1 at 7. The witness later identified Mr. Taylor in a photo lineup. *Id.* The Del City Police Department also collected four shell casings, all of which were a ballistic comparison match with rounds fired from the weapon police found in Mr. Taylor's home. Doc. No. 84-2.

The second incident occurred on June 6, 2020, when Defendant shot Nakita Thompson after negotiating to purchase her car for $200. Doc. No. 84-3 at 17. At the sentencing hearing, the victim testified that Mr. Taylor knocked on her door and asked whether the car in her driveway was for sale. She informed him it was, and they agreed to a $200 price for the vehicle. Defendant then took the title to verify it. He also filled out a vehicle transfer form and gave it to Ms. Thompson. Throughout the day and into the evening, Defendant came and went from her home to further negotiate the deal and work on the car. That night, Mr. Taylor attempted to short-change Ms. Thompson and she asked him to leave. *Id.* Defendant left but returned later that night and kicked in the door. He demanded cash from Ms. Thompson, threatened her with a pistol, and shot the walls of her home. Mr. Taylor snatched her purse, but she managed to lure him outside by telling him she had more cash in her car. She hoped to get Mr. Taylor outside, away from her son and grandson. Once outside, Defendant fired at Ms. Thompson, injuring her legs and hand. Defendant left Ms. Thompson bleeding in her front yard and sped away in his Camaro.

Del City Police located Mr. Taylor at his home and found the Camaro parked in his driveway. *Id.* at 13. Ms. Thompson's fifteen-year-old son picked Defendant out of a photo lineup. *Id.* at 15. Police also found the vehicle transfer form with Defendant's name and address. Doc. No. 84-4. Officers additionally collected seven cartridge casings from Ms. Thompson's home and yard; the ballistics for each bullet matched the weapon police found in Mr. Taylor's home. Doc.  No. 84-5.

guilty. The only factor that is arguably neutral is the absence of substantial prejudice to the government, and this factor, even if it weighed more heavily in Defendant's favor, is insufficient to support his burden. *See Marceleno*, 819 F.3d at 1272 ("[i]f the assertion-of-innocence, knowing-and-voluntary, and ineffective-assistance-of-counsel factors all weigh against the defendant, a district court need not consider the remaining four factors.").

For the reasons above, the Court DENIES Defendant's Motion to Withdraw Plea of Guilty [Doc. No. 99].

**IT IS SO ORDERED** this 14th day of July 2022.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**